THE STATE v. TODD, *Appellant.*

### Division Two, November 21, 1898.

1. **Criminal Law**: MURDER IN SECOND DEGREE: CASE REVIEWED. The evidence in this case, one wherein the defendant was convicted of murder in the second degree for shooting to death, with a pistol, her daughter, is set out, reviewed and held to be sufficient to support the verdict.

2. **Criminal Practice:** LIST OF JURORS: DELIVERY TO DEFENDANT'S ATTORNEY INSTEAD OF DEFENDANT. A list of jurors found by the court to be qualified to sit, was delivered to defendant's attorney instead of to defendant, as provided by section 4204, Revised Statutes 1889. *Held*, that the right to have the list delivered to her in person, was a statutory privilege which she might and did waive by not objecting at the proper time. And *held* further that the delivery of the list to her attorney was a delivery to her and that she could not have been injured by the failure to deliver to her in person.

3. ————: JURORS: SEPARATION OF, BEFORE BEING SWORN AND IMPANELED. The rule in capital cases, as set out in section 4209, Revised Statutes 1889, forbidding the separation of a jury, applies only to the jury when duly impaneled and sworn, and it is not error for a trial court to permit a jury, having been selected to try the case but not sworn or impaneled to separate.

*Appeal from Ralls Circuit Court.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

*Tapley & Fitzgerell* and *D. A. Ball* for appellant.

(1) We challenge the sufficiency of the proof in this case to sustain the verdict of the jury and judgment of the court. (2) On the last and fourth trial the sheriff served the list of qualified jurors on D. A. Ball, attorney for defendant, instead of upon defendant, as the law directs. R. S. 1889, sec. 4204. (3) The

record shows that defendant was not present in court during the examination of the panel of jurors touching their qualification to sit as jurors, until at least half of the panel had been examined. R. S. 1889, sec. 4191; *State v. Smith*, 90 Mo. 37; *State v. Able*, 65 Mo. 37. (4) The record also shows that on the day of the beginning of the trial, October 19, 1897, the State and defendant having made their challenges, the twelve jurors were permitted to separate and mix and mingle with the crowd. Later the jury returned into court and took their seats in the jury box. But before being sworn, the defendant objected to swearing the jury to try the cause, and objected to being tried by the jury for the reason that after being selected to try the cause, the jury were permitted to separate, and had not been placed in charge of an officer as the law directs. R. S. 1889, sec. 4209; *State v. Orrick*, 106 Mo. 111; *State v. Steifcl*, 106 Mo. 129; *State v. Avery*, 113 Mo. 475; *State v. Howell*, 117 Mo. 307; *State v. Howland*, 119 Mo. 419; *State v. Murray*, 126 Mo. 611; *State v. Schmidt*, 137 Mo. 266.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) There is ample evidence, if believed, to support the verdict. (2) Service upon defendant's attorney is for all ordinary purposes to be looked upon and considered the same as service upon herself. This requirement is a statutory proceeding entirely, and defendant has no fundamental or common law right to it. The record does not show an objection at the time. But on the other hand, shows that defendant made no objection and proceeded with the same as though the list had been handed to her in person. Under such circumstances, she will be held to have waived her statutory

right therein.   This is a duty such as is devolved on the officers of the court, but she may waive this duty, if she so desires.   *State v. Klinger*, 46 Mo. 224; *State v. Gilmore*, 95 Mo. 554; *State v. Waters*, 62 Mo. 196. (3)   The trial proper does not commence until the jury is sworn; therefore a separation before they are sworn does not work a violation of the statutes.   The cases referred to by defendant are all based upon the fact of a separation after the jury was sworn and trial commenced.   But be the law as it may, the defendant did not interpose her objections in time.   In failing to present the matter to the court at the time of the discharge, and failing to save her exceptions at that time to the action of the court in permitting them to separate, the defendant will be held to have waived whatever right she may have had in the premises and to have consented and acquiesced in the manner in which the trial was being conducted and to the proceedings adopted by the court.   *State v. James*, 53 Ala. 380; *Williams v. State*, 45 Ala. 57.   So long as they had not been sworn to try the cause there can be no necessity in keeping them together.   Whart. Crim. Law, 275; *State v. Babcock*, 1 Conn. 401; *State v. Hines*, 8 Hump. 599; *State v. Burns*, 33 Mo. 487; *Epes'* case, 5 Grat. 676; *Tooel v. Com.*, 11 Leigh, 714.

BURGESS, J.—At the September term, 1895, of the Hannibal court of common pleas the defendant was indicted by the grand jury, of Marion county, for murder in the first degree for having at said county on the fifteenth day of June, 1895, killed and murdered her daughter, Hettie Bethel, by shooting her to death with a pistol.

Upon defendant's application a change of the venue of said cause was granted to the circuit court of Ralls county, where there were three mistrials, and one

trial at the August term, 1897, at which she was found guilty of murder in the second degree, and her punishment fixed at twenty-five years in the State penitentiary.    She then filed a motion for a new trial and in arrest, which being overruled she appeals.

The defendant was twice married, her first husband, the father of her deceased daughter Hettie, having died about ten years previous to the homicide. She afterwards married one Charles E. Todd, from whom she obtained a divorce a short time before the death of Hettie.

Hettie seems to have been the cause of the separation and divorce, the defendant claiming that she and Todd had been criminally intimate with each other. At the time of her death deceased was a few months over twenty-two years of age.    She and Todd were very intimate, and were frequently seen in secluded places together.  Defendant testified that upon one occasion she caught them in a compromising position, and that she had often tried to persuade her daughter to be a lady, and to break off her relations with Todd.    On the day of the homicide defendant was moving her household goods, when deceased entered the house and demanded of her mother her handkerchief and pictures, which she denied having.    In this way they got into a dispute, and finally a scramble over a pistol, both of them having hold of it, which resulted in deceased being shot twice, once, in the chest and once in the abdomen, both balls ranging downward and outward, producing almost instant death.

The evidence was conflicting as to who first had possession of the pistol, defendant or the deceased. When deceased was shot she opened the door and ran out into the street, exclaiming, "Oh, Ma, you have killed me, you have shot me."    About this time one P. H. Rutherford drove along the street in a wagon in

front of defendant's house, and saw deceased as she came out of the house, heard her cries, and saw her fall to the ground. The defendant was then standing in the door and was asked by Rutherford, "What is the matter?" to which she replied, "Nothing, drive on." She was afterwards seen sitting on the door steps crying, and was heard to say, "Hettie shot herself." Defendant had threatened Hettie with violence if she did not cease associating with Todd.

The court instructed for murder in the first and second degrees, and manslaughter in the third and fourth degrees.

1. Defendant challenges the sufficiency of the proof to sustain the verdict of the jury, and we are asked to review the same. The bare statement of the facts connected with the homicide without again repeating them were sufficient to authorize an instruction for murder in the second degree, and whether or not the killing was willful, premeditated and of malice aforethought, was for the consideration of the jury under the evidence and instructions of the court, who found adversely to defendant's contention, and there was we think abundant evidence to sustain that finding.

2. Section 4204, Revised Statutes 1889, provides that a list of jurors who have been found by the court to be qualified to sit as such in his case shall be delivered to the defendant in the case, when in the case in hand, it was delivered to one of defendant's attorneys instead of to her personally, and this is assigned for error. Defendant insists that as the statute provides that the list shall be delivered to the defendant, it must be strictly complied with, and that it was not waived by defendant; but we can not concur in this view. She made no objection at the time, but proceeded just as if the list had been delivered to her in person, and her rights could not in any way have been

prejudiced by the failure of the delivery of the list to her in person. Beside it is a mere statutory privilege which she might and did waive by not objecting at the proper time. *State v. Waters*, 62 Mo. 196; *State v. Gilmore*, 95 Mo. 554. Moreover, the delivery of the list to her attorney was in legal contemplation a delivery to her, and we are unable to perceive how she could have been injured by the failure to deliver the list to her in person. Whatever benefit there was to be derived by her from the delivery of the list to her in person she got anyway, and has no reason we think to complain.

3. It appears from the record that after the State and defendant had made their challenges, the twelve jurors who were found qualified, and selected to try the cause, were called in the jury box by order of the court, and before being sworn to try the case and without the consent of defendant discharged for about two hours, during which time they went where they liked, and mixed with the many people who were there in the town of New London where the case was being tried. That when they were again called in the jury box for the purpose of being sworn to try the case defendant objected to their being sworn, and to being tried by them for the reason that they had been permitted to separate; and although these jurymen were charged by the court not to talk about the case among themselves, nor permit others to do so in their presence, it is insisted by defendant that by reason of the provisions of section 4209, Revised Statutes 1889, prohibiting the separation of juries in certain cases, and the rulings of this court in *State v. Orrick*, 106 Mo. 111, and *State v. Steifel*, 106 Mo. 129, error was committed for which the judgment should be reversed, in the absence of an affirmative showing upon the part of the State that the jurors were not subject to improper influence. No

support for this contention can be found in said section, nor in either of the cases cited, all of which have reference to the separation of a jury during the progress of a trial, and not before.

In Wharton's Am. Criminal Law [3 Ed.], 273, it is said: "Until the jury are sworn it is not necessary that they should be kept together."

In *Epes'* case (5 Grat. 676), in which several days were occupied in completing the panel in a trial for murder, it was ruled that it was not necessary that the jurors who had been sworn should be committed to the custody of the sheriff until the whole number of the panel was completed.

In *State v. Burns*, 33 Mo. 483, the regular panel was exhausted when only ten who were competent to serve as jurors had been selected, whereupon the court ordered a venire to issue for an additional number, and while the writ was being served the court proceeded with other business, and tried another case on the same day, the ten veniremen, who had been selected in the other case, forming a part of the jury. Upon the conclusion of the case, the writ of venire was returned, and two additional jurors selected which completed the panel, whereupon, the court discharged the jurors until the following morning, with the usual admonition not to talk with any person about the case, nor permit any person to talk about the case in their presence. As in this case they had not been sworn or impaneled, nor was any objection made at the time by the defendant, and it was held that the rule in capital cases forbidding the jury to separate, applies only to the jury when duly impaneled, sworn and charged with the case.

Every lawyer knows how inconvenient, if not impracticable, it would be to keep in the charge of the sheriff a panel of jurors in a capital case, after their

selection, and before twelve of their number are accepted and sworn to try the case and especially is this so if the defendant should take the time allotted to him by statute in which to pass upon the list of qualified jurors, and in the absence of statutory enactment it is not necessary to do so.

Finding no reversible error in the record we affirm the judgment. GANTT, P. J., and SHERWOOD, J., concur.