# THE STATE v. CLARENCE WALLS, Appellant.

### Division Two, November 24, 1914.

1. **COINDICTEE: Testifying Without Objection.** An assignment that a co-indictee was used as a witness against defendant before a *nolle prosequi* had been entered cannot be considered on appeal, if no objection was interposed to his competency when he was offered as a witness. No objection to the competency of a witness can be considered on appeal not raised at the proper time in the trial court.

2. **INSTRUCTIONS: Stealing Chickens: Definition of Grand Larceny.** An instruction defining grand larceny which omits the fact that the chickens must have been taken in the nighttime to have constituted grand larceny, is immaterial and harmless, if the words "grand larceny" do not appear in any other instruction, and the jury were not required to find the defendant guilty of grand larceny, and the only issue under the evidence was whether defendant stole the chickens, and that issue was presented in a proper instruction.

3. **CONVICTION: On Evidence of Accomplice.** A defendant may be convicted of stealing chickens in the nighttime upon the testimony of an accomplice.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Lacy & Shelton* for appellant.

(1) The defendant's demurrer to the State's evidence should have been sustained and the defendant discharged. R. S. 1909, sec. 5231; State v. Clark, 147 Mo. 36; State v. Anslinger, 171 Mo. 600. (2) Instruction number 1 given on behalf of the State; defining grand larceny, is not applicable to this case; is misleading, prejudicial to the defendant and not a correct definition of the offense charged. The facts in evidence do not justify this instruction. State v. El-

sey, 201 Mo. 571; State v. Gordon, 191 Mo. 114; State
v. Walker, 196 Mo. 85; State v. Chambers, 87 Mo. 409;
State v. Evans, 124 Mo. 410; State v. Matthews, 148
Mo. 185. (3) Instruction number 3 given on behalf of
the State is not predicated on the facts evolved at the
trial. There is no evidence in the record that the de-
fendant "alone" did steal, take and carry away, etc.,
any chickens. State v. Hargraves, 188 Mo. 337. (4)
Refused instruction B requested by the defendant was
sufficient to call the attention of the court to the incom-
petency of the witness Zust to testify in the case, while
jointly charged in the information with the defend-
ant and neither discharged nor found guilty. In view
of the fact that the witness Zust was jointly charged
in the same information with the defendant, this in-
struction should have been given. State v. Chyo
Chiagk, 92 Mo. 395; State v. Weaver, 165 Mo. 12. (5)
The court failed to instruct the jury on the good char-
acter of the defendant, as required by statute, although
defendant had placed his character in issue and intro-
duced several witnesses who testified it was good for
honesty and fair dealing and a law-abiding citizen.
R. S. 1909, sec. 5231; State v. Anslinger, 171 Mo. 600;
State v. Clark, 147 Mo. 36. (6) As to the material
elements of the offense, the conviction of the defend-
ant is based solely upon the evidence of the witness
Zust. The record and the evidence show that at the
time he testified he stood jointly charged in the same
information (which is shown by the record in this
case) with the defendant, and by the same information
upon which the defendant was tried and convicted.
So that by statute and the law of this State Zust was
absolutely incompetent as a witness to testify against
the defendant. The conviction of defendant rests solely
upon the evidence of an incompetent witness. R. S.
1909, sec. 5241; State v. Chyo Chiagk, 92 Mo. 395; State
v. Weaver, 165 Mo. 12.

*John T. Barker,* Attorney-General, and *Shrader P. Howell* for the State.

(1) The demurrer to the evidence filed by defendant at the close of the State's case was properly denied. There had been substantial evidence offered on every necessary element to constitute the crime charged. Furthermore, this assignment of error is not before this court for review, for the reason that defendant failed to stand upon the demurrer but offered testimony in his defense, thereby waiving his rights under the instruction asked. (2) The direct testimony of the co-indictee and participant in the crime, if true, showed conclusively that the defendant was guilty as charged, and this testimony was corroborated by strong circumstantial evidence. Under our statute, if one by his presence at the scene of crime lends encouragement to its perpetration and is in a position and willing to render assistance if necessary to the active participant, he is in contemplation of law equally guilty with the one who physically consummates the criminal act. State v. Orrick, 106 Mo. 120; State v. Kennedy, 177 Mo. 131; State v. Nelson, 98 Mo. 414; 1 Wharton's Criminal Law, sec. 211a. The common design or purpose to commit the criminal act need not be shown by direct and positive evidence, it may be deduced by attending circumstances connected with the transaction in question. State v. Walker, 98 Mo. 104; State v. Sykes, 191 Mo. 78; State v. Spaugh, 200 Mo. 591; State v. Fields, 234 Mo. 623. (3) It is not necessary to frame an instruction with the technical precision of an information. The purpose of an instruction is to serve as a guide to a jury composed of average, plain men and to assist them to a correct understanding of the law as applied to the facts of the particular case which they are called upon to determine. Under that principle of construction instruction number one when considered in connection with

the implied meaning of the words used therein, will be found sufficient. State v. Richmond, 228 Mo. 365; State v. DeWitt, 152 Mo. 85; State v. Campbell, 108 Mo. 611; State v. Gray, 37 Mo. 464; State v. Sasseen, 75 Mo. App. 201; State v. Moore, 101 Mo. 326. Moreover, it is a well-established rule that instructions given on the trial of a case are to be taken together as constituting one whole, and if, when read together, they correctly announce the law applicable to the case, they are sufficient. Applying that test to the instructions given, it will be found that instruction number one, as amplified and explained by instruction number three, fairly stated the law of grand larceny as applicable to this case. State v. Matthews, 98 Mo. 130; State v. Riney, 137 Mo. 105; State v. Dunn, 221 Mo. 530; State v. Hall, 228 Mo. 456; State v. Montgomery, 230 Mo. 660. Instruction number three is an accurate statement of the constitutive elements of the crime charged as defined in the statute and contained in the information. It sets out the facts necessary to constitute the offense of grand larceny under section 4537. Sec. 4537, R. S. 1909; State v. Lawson, 239 Mo. 600; State v. Alexander, 184 Mo. 273. (4) Instruction B was correctly and fully covered by the first instruction given by the court at defendant's request. The court, therefore, did not err in refusing the instructions asked. State v. Crittenden, 191 Mo. 23; State v. Edwards, 203 Mo. 545; State v. Carpenter, 216 Mo. 448; State v. Green, 229 Mo. 655; State v. Dipley, 242 Mo. 480; State v. Connors, 245 Mo. 481; State v. Butler, 247 Mo. 699. (5) At the time the instructions on behalf of the State were given the defendant neither requested an instruction on good character nor excepted to the failure of the court to so instruct. No exception was entered at the time the instructions were given nor was the failure of the court to instruct on good character in any manner referred to in the motion for a new trial, other than by the general and indefinite allegation that the "court

failed to instruct on all the law of the case." An allegation such as is contained in the motion for a new trial in the case at bar is insufficient to preserve the alleged error for review here. Sec. 5285, R. S. 1909; State v. Douglass, 258 Mo. 281; State v. Sydnor, 253 Mo. 380; State v. Conway, 241 Mo. 291; State v. Sykes, 248 Mo. 712; State v. Horton, 247 Mo. 663; State v. Dockery, 243 Mo. 599; State v. Chissell, 245 Mo. 555; State v. Connors, 245 Mo. 482; State v. Bostwick, 245 Mo. 483; State v. Harris, 245 Mo. 450; State v. Wellman, 253 Mo. 316; State v. Gaultney, 242 Mo. 391; State v. Stevens, 242 Mo. 439; State v. Fisher, 162 Mo. 172; State v. Kimmell, 156 Mo. App. 472. (6) The incompetency of a witness cannot be raised for the first time in this court. Kelly's Crim. L. and Pr., sec. 263; State v. Crab, 121 Mo. 564; State v. Witherspoon, 231 Mo. 724; State v. Whitsett, 232 Mo. 526.

BROWN, J.—Convicted of stealing chickens in the nighttime, as denounced by section 4537, Revised Statutes 1909, and his punishment fixed by a jury at two years in the penitentiary, defendant appeals.

Defendant and one Glen Zust, his hired hand, were jointly charged with stealing thirty-one chickens from one Sherman Sutton in Macon county, Missouri, in June, 1913.

The conviction, in a large measure, rests upon the evidence of Glen Zust, who testified that he went with defendant at about the hour of midnight to a point within one-eighth of a mile of the home of Sutton, where defendant remained with some sacks while Zust went to Sutton's henhouse and stole the chickens, one by one, and carried them to defendant, who placed them in sacks and took them to his home. Zust testified that three separate trips were made and between twelve and sixteen chickens stolen from Sutton by him and defendant on each trip, and that a few days later defendant took the chickens to the near-by towns of

Callao and New Cambria and sold them. Witness Zust further stated that his feelings toward defendant were unkind, because defendant struck him and refused to pay his wages.

Prosecuting witness Sutton testified to missing a good many chickens in June, 1913, and to the further fact that defendant raised no chickens. Two merchants, one from Callao and the other from New Cambria, testified that they bought chickens from defendant in June, 1913, about thirty altogether, and produced some of the checks which were issued in payment for the chickens.

Defendant, testifying in his own behalf, denied the theft, but admitted that he raised no chickens and that he sold chickens as testified to by the merchants. His defense was that he obtained from his father the chickens which he sold in Callao and New Cambria. On this point he was corroborated by the evidence of his father.

In rebuttal, four of defendant's neighbors testified that his reputation for veracity was bad, and a similar number that his reputation for honesty and fair dealing was likewise bad. Two others testified that they did not know anything derogatory of defendant's reputation.

The alleged errors relied upon for reversal will be noted in connection with the conclusions we have reached.

## OPINION.

I. One of the alleged errors relied upon for reversal is the fact that Glen Zust, who occupied the position of a co-indictee of defendant, was used as a witness for the State at a time when the charge against him had not been nol-prossed. In support of this assignment defendant cites State v. Chyo Chiagk, 92 Mo. 395, and

Witness: Competency of.

State v. Weaver, 165 Mo. 1, 1. c. 12. This assignment is not open to defendant here because no objection was interposed to the incompetency of said witness Zust when he was offered by the State. This precise point was expressly ruled adversely to the insistence of defendant in the case of State v. Crab, 121 Mo. 554, 1. c. 563-4. [See, also, State v. Whitsett, 232 Mo. 1. c. 526.] As we do not try criminal cases *de novo,* no objection to the competency of a witness can be considered here which was not raised below at the proper time. If defendant had objected when Zust was offered as a witness the court could have removed his alleged disability by dismissing the charge as to him. [Sec. 5241, R. S. 1909.] It would be grossly unfair to the prosecution to allow the defendant to remain silent when the law required him to speak, and then on appeal permit him to profit by his own nonaction. This assignment is ruled against defendant.

II. Complaint is made against instruction number 1, given on the part of the State, which reads as follows:

"Grand larceny, as used in these instructions, is the unlawfully, wrongfully and feloniously taking of another's property with the wrongful, fraudulent and felonious intent to deprive the owner thereof and to make it his own property."

**Instruction.**

This instruction is assailed on the ground that it is not a correct definition of the offense charged against defendant, and is misleading and prejudicial. It is true that the definition of grand larceny contained in said instruction omits the fact that the chickens must have been taken in the nighttime to constitute grand larceny. It is difficult, however, to see how this instruction could have misled the jury, for the reason that the words "grand larceny" do not appear in any other instruction given in this cause. The instruction

under consideration was only intended as a definition or guide to the jury to ascertain the meaning of the words ''grand larceny,'' which the court evidently thought it would thereafter use in other instructions in this cause, but which words it did not subsequently use, and did not need to use. Therefore, said instruction became meaningless as a guide to the jury in this cause. If, under the evidence, there was a controversy or doubt as to whether defendant took the chickens from witness Sutton under some claim of right, then instruction number 1 might have proven harmful, but such an issue is not in the record. Under the evidence defendant either stole the chickens, or he did not get them from Sutton at all.

The third instruction given on the part of the State reads as follows:

''The jury are instructed that if they believe from the evidence beyond a reasonable doubt the defendant, Clarence Walls, either alone or in company with one Zust, did feloniously in the nighttime, on or about the 9th day of June, 1913, take, steal and carry away from the premises of Sherman Sutton, upon which his dwelling house was situated,——chickens, the property of Sherman Sutton, you will find the defendant guilty as charged and assess his punishment at imprisonment in the penitentiary for a term not exceeding five years nor less than two years, or by fine not exceeding two hundred dollars, or confinement in the county jail not exceeding two months, or by both such fine and imprisonment.''

It will be seen that the last-quoted instruction tells the jury that the taking of the chickens must have occurred in the nighttime, and further informs them that such chickens must have been stolen to constitute the crime of which defendant was charged. We, therefore, hold that, when considered with instruction number 3, given in this case, instruction number 1 was a harmless error which was not prejudicial to the de-

fendant upon the merits. As no judgment should be reversed for errors that are only technical, we over-- rule this assignment. [State v. Richmond, 228 Mo. 362, l. c. 365.]

III. Defendant seems to be deeply grieved because he was convicted on the evidence of his accomplice Zust. However, the court gave. the usual cau-

Accomplice.     tionary instruction to guide the jury in weighing the evidence of an accomplice, and this point is without merit. [State v. Sassaman, 214 Mo. 695, l. c. 729; State v. Bobbitt, 215 Mo. 10, l. c. 41; State v. Shaffer, 253 Mo. l. c. 335.]

IV. Other alleged errors relating to instructions given and refused are assigned by defendant, all of which we have carefully examined and find that they are either not preserved for review in the motion for new trial, or that they are so unimportant as not to merit special mention in our opinion. [State v. Conway, 241 Mo. 271; and State v. Douglas, 258 Mo. 281.]

There being no reversible error in the record we affirm the judgment.

*Walker, P. J.,* concurs; *Faris, J.,* concurs in result.